DA 17-0380

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 61

IN THE MATTER OF:

I.M., O.G. and A.D.

Youths in Need of Care.

APPEAL FROM: District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DN 15-16
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Robin Meguire, Attorney at Law; Great Falls, Montana
(for Mother)

Kelly M. Driscoll, Montana Legal Justice; Missoula, Montana
(for Father)

For Appellee:

Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General; Helena, Montana

Terryl Matt, Glacier County Attorney, Mark Westveer, Deputy County
Attorney; Cut Bank, Montana

Submitted on Briefs: February 28, 2018

Decided: March 27, 2018

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    S.M. (Mother) is the biological mother of I.M., O.G., and A.D.  J.D. (Father) is the biological father of A.D.  Mother and Father appeal the June 5, 2017 orders of the Ninth Judicial District Court, Glacier County, terminating their respective parental rights to the children. We affirm.

¶2    We restate the issues on appeal as follows:

> 1.    *Whether the District Court erred in admitting Mother's and Father's drug test results at the termination hearing.*
>
> 2.    *Whether the District Court abused its discretion in terminating Mother's and Father's parental rights.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    I.M. and O.G. were born to Mother in 2011 and 2012, respectively.  A.D. was born to Mother and Father on May 8, 2015.  Shortly after A.D.'s birth, she began to suffer from withdrawals.  On May 11, 2015, A.D. was transported to the NICU at Benefis Hospital in Great Falls, Montana due to the severity of the withdrawals.  On May 14, 2015, the Montana Department of Public Health and Human Services (Department) filed a Petition for Emergency Protective Services.

¶4    Both parents stipulated to adjudicating the children as youths in need of care and granting temporary legal custody (TLC) to the Department.  On January 27, 2016, Mother and Father each stipulated to court-approved treatment plans designed to address their chemical dependency issues, their mental health issues, and their deficient parenting skills. On March 18, 2016, a licensed chemical dependency counselor, Raymond Antonsen (Antonsen), conducted chemical dependency evaluations of both parents.   Antonsen

2

diagnosed Mother with a substance abuse disorder and recommended intensive outpatient treatment. Antonsen found Father struggled with substance abuse and recommended Father participate in inpatient services followed by sessions with a provider experienced in treating co-occurring mental health disorders. The District Court extended TLC on multiple occasions to allow both parents time to complete their treatment plans.

¶5 On October 11, 2016, the Department petitioned to terminate both parents' parental rights pursuant to § 41-3-609(1)(f), MCA, on the grounds that neither had successfully completed their respective treatment plans. The District Court held termination hearings on March 29 and April 12, 2017. The Department presented the following witnesses: Antonsen, Doreen King (King) of Big Sky Testing Services, Dani Walter (Walter) of Compliance Monitoring, Court Appointed Special Advocate Cheryl Lux (CASA Lux), and Child Protective Specialist Amy Krause (CPS Krause).

¶6 After Antonsen testified regarding each parent's chemical dependency evaluations, the Department called King to testify. Although King works as a specimen collector at Big Sky Testing Services, she did not perform the actual urinalysis or hair follicle testing. The Department sought admittance of the parents' drug testing results through King, but Father objected on the basis of hearsay and lack of foundation. The District Court sustained the objection. The Department then called Walter to testify. Walter is a urinalysis and hair follicle collector employed by Compliance Monitoring Systems. Neither Walter nor King testified to the drug testing results of the specimens they had collected from the parents. CASA Lux testified regarding the well-being of the children since they began living with the maternal grandparents at the time of removal. CASA Lux recommended permanent

3

guardianship with the grandparents, but agreed termination of Mother's and Father's parental rights may be appropriate. CASA Lux testified she had reviewed the written reports of Mother's and Father's respective drug testing results, but she did not testify as to those results. CASA Lux further testified that her review of the drug test results assisted her in forming her opinion as to the best interest of the children.

¶7 The Department's last witness was CPS Krause. The Department again sought admittance of the parents' respective drug testing results through CPS Krause. The Department argued the written reports of the drug testing results were admissible through CPS Krause under the business record exception to the hearsay rule. Counsel for both parents objected based on hearsay and for lack of foundation. The District Court provisionally admitted each parent's drug testing results pending briefing by the parties on whether proper foundation had been laid. CPS Krause proceeded to testify regarding Mother's and Father's failed drug tests. CPS Krause further testified regarding the progress Mother and Father had recently shown with completing their treatment plans, but also testified she did not believe either's progress showed sufficient compliance within a reasonable time.

¶8 The parties submitted briefs regarding the admittance of the drug testing results through CPS Krause. The parents both argued the results of their drug tests were hearsay and not admissible without the testimony of a laboratory technician. The Department maintained such was not necessary and that the test results were admissible as an exception to the hearsay rule as a business record. The termination hearing was continued until April 12, 2017. At the outset of the April 12, 2017 hearing, the District Court ruled on the

4

admissibility of the parent's respective drug testing results. The District Court admitted

the results of the drug testing through CASA Lux stating the following:

> What I'm doing now is I'm going to rule on that and it's kind of strange, but I'm ruling on it based upon what I see as the status of the Mom. The information concerning the results of the drug test is admissible through the CASA person because they can both put it in a report and testify as to matters which are hearsay. Well, there's no doubt that the reports are hearsay. The other issue raised was whether or not they would, the reports would get in through the business record exception, which my reading of the case cited would require a foundation from the creating entity which would be the entity that performed the testing or the actual document could be admitted as a business record, which we didn't have. *But the information concerning the test results can and did come in through the CASA and is hearsay, but both statutorily and through case law, a CASA is allowed to testify as part of its investigation and as part of its recommendations, the Court has what's in the best interests of the child basis, the test results are admissible and the information testified to by the CASA concerning those test results is admitted and stays on the record.* If that's -- Did I clarify that? Oh, it made it worse. It's in. That's how it's in. It's not in for a business record exception.

(Emphasis added.)

¶9 On June 5, 2017, the District Court issued its Findings of Fact, Conclusions of Law, and Order terminating Mother's parental rights to I.M., O.G., and A.D. and Father's parental rights to A.D. The District Court found Mother and Father each failed to complete several aspects of their respective treatment plans. Although the Department attempted to make contact with either or both parents on 38 occasions, Mother and/or Father returned contact with the Department on only 16 occasions. The Department also attempted to set up times to meet with the parents on eight occasions without success. Specifically, Mother failed to attend three scheduled chemical dependency evaluations and when she completed an evaluation on March 18, 2016, she failed to meet with the Department to discuss the results of the evaluation and the recommendations as to treatment. Although the

5

Department attempted to contact Mother 46 times regarding her random drug testing, she only responded on eleven occasions. Mother had tested positive for illegal drugs on eleven occasions. The District Court did find Mother had provided five clean drug test results from February 2017 to March 2017. Regarding Mother's mental health, Mother set up and attended only one counseling appointment on February 7, 2017. Regarding Mother's parenting skills, Mother visited the children only seven times and called them less than 50% of the scheduled times since their removal on May 9, 2015. Mother attended one parenting class on February 8, 2017, but failed to attend the next three classes. Further, Mother failed to maintain contact with the Department.

¶10 The District Court's findings regarding Father's compliance with the treatment plan are similar to those it found with regard to Mother. Father failed to attend three scheduled chemical dependency evaluations and when he finally completed an evaluation on March 18, 2016, he also failed to meet with the Department to discuss the results of the evaluation and his treatment needs. Although the Department attempted to contact Father 46 times regarding his random drug testing, he only responded on eight occasions. Father tested positive for illegal drugs on eight occasions. The District Court did find that although the four drug tests Father provided in March 2017 were positive for THC, these four tests were negative for methamphetamine. Father did not participate in any chemical dependency treatment programs. Regarding Father's mental health, Father failed to attend or schedule any mental health appointments. Regarding Father's parenting skills, Father visited A.D. only seven times and only occasionally called and spoke to A.D. since the child's removal in May 2015. Father attended one parenting class on February 8, 2017,

but failed to attend the next three classes. Father failed to maintain contact with the Department.

¶11 The District Court determined with regard to each child that Mother's and Father's conduct was "unlikely to change within a reasonable time based on the birth parents lack of commitment to remain drug free, lack of cooperation with the Department, and lack of motivation to be integrated into the youth's daily life." The District Court found that although Mother and Father had recently communicated with the Department, the communication occurred only after the Department petitioned for Termination of Parental Rights and each had not worked with the Department to complete their court-approved treatment plans for the nearly two years prior to the filing of the termination petition. Further, the District Court found it was unlikely Mother or Father would complete their treatment plans in the foreseeable future. Both parents timely appeal the District Court's termination of their parental rights.

## STANDARD OF REVIEW

¶12 A district court's decision to terminate parental rights is reviewed for an abuse of discretion. Findings of fact are reviewed for clear error. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court a mistake was made. *In re J.B.*, 2016 MT 68, ¶ 10, 383 Mont. 48, 368 P.3d 715 (citations omitted). Conclusions of law are reviewed to determine whether the district court interpreted the law correctly. *J.B.*, ¶ 9 (citation omitted).

7

¶13 This Court reviews a district court's evidentiary rulings for an abuse of discretion. To reverse a district court's evidentiary ruling for an abuse of discretion, this Court must determine the district court either acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re O.A.W.*, 2007 MT 13, ¶ 32, 335 Mont. 304, 153 P.3d 6 (citations and quotations omitted).

## DISCUSSION

¶14 *1. Whether the District Court erred in admitting Mother's and Father's drug test results at the termination hearing.*

¶15 Both parents argue the District Court erred in admitting evidence of Mother's and Father's drug test results. Specifically, they argue the District Court erred in relying on § 41-3-112(4), MCA, to admit the drug test results through CASA Lux's testimony. Both parents maintain the drug test results were improperly admitted through CASA Lux without sufficient foundation. The State argues the District Court did not error in admitting the drug test results through CASA Lux asserting her testimony provided sufficient foundation.

¶16 M. R. Evid. 801 provides, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is not admissible except as otherwise provided by statute, these rules, or other rules applicable in the courts of this state." M. R. Evid. 802. The Department sought to introduce evidence of the drug test result reports, which showed both parents failed their drug tests on multiple occasions. Out-of-court statements to that effect are hearsay and inadmissible unless an exception to the hearsay preclusion applies. The

8

State does not dispute the drug test results are hearsay and, on appeal, now does not argue an exception to the hearsay exclusion is applicable.[1]  Thus, the laboratory drug test results constituted inadmissible hearsay and could not be admitted into evidence.

¶17   Nevertheless, the District Court admitted testimony regarding the drug test results through CASA Lux.  Specifically, the District Court admitted the testimony based on § 41-3-112(4), MCA.  Section 41-3-112(4), MCA, states: "information contained in a report filed by the guardian ad litem or testimony regarding a report filed by the guardian ad litem is not hearsay when it is used to form the basis of the guardian ad litem's opinion as to the best interests of the child."  At issue in this case is whether this provision allows a district court to issue a finding of fact based on evidence that constitutes hearsay contained within the guardian ad litem's report.

¶18   Section 41-3-112(4), MCA, originated in 1999 when the Legislature added subsection 3 to § 41-3-303, MCA (1999).  HB 366, 56th Leg. (Mont. 1999).  The purpose of House Bill 366 was to bring Montana into compliance with the Adoptive and Safe Families Act which was designed to make the child's safety the paramount concern in child dependency cases.  The legislative history provides that the intent of adding subsection 3 was to clarify that "reports of the guardian ad litem are to be allowed into evidence for the purpose of forming the basis of the GAL's opinion and recommendations regarding the child's best interest, *but the court is not to rely on the information contained in the reports*

---

[1] The Department argued to the District Court that the drug test results were admissible through the business records exception to hearsay.  However, the State does not argue the applicability of the business records exception on appeal.

*as basis for legal findings without more direct, admissible evidence.*" House Committee on Judiciary Hearing, Exhibit 3, (January 27, 1999) (emphasis added). The legislative history of § 41-3-303(3), MCA (1999), reveals subsection 3 was enacted to allow a guardian ad litem's report to be admitted into evidence even if the basis of the guardian ad litems' opinions or recommendations regarding the child's best interest contained hearsay. The legislature specifically noted, however, the court should not rely or admit information contained in the report "without more direct, admissible evidence." Section 41-3-303(3), MCA, has been renumbered as § 41-3-112(4), MCA, but the language remains the same.

¶19 Based on the plain language and legislative history of § 41-3-112(4), MCA, the District Court erred in admitting the drug test results through CASA Lux. The legislature enacted what is now § 41-3-112(4), MCA, to allow guardian ad litems to gather information from collateral sources to form and make recommendations as to the best interest of the child. The subsection was not enacted as a bypass for the Department to admit evidence reviewed by a guardian ad litem or contained within a guardian ad litem's report that would otherwise be inadmissible or to cure a party's failure to call a qualified witness to testify regarding the admissible evidence.

¶20 Thus, while a CASA may rely on her review of a parent's drug test results to form her opinions and recommendations regarding the best interest of the children, the drug test results are not admissible through the CASA and cannot support a district court's finding of a parent's failed drug test without other admissible evidence to support that finding. The District Court erred in admitting the testimony regarding the results of the parents' respective drug tests through CASA Lux pursuant to § 41-3-112(4), MCA. In order for the

10

Department to admit the parents' respective drug testing results into evidence, the Department would have to call a qualified expert witness to testify regarding the process of the specimen collection, the testing method utilized and the accuracy and reliability of the specimen analysis.

¶21 Finally, we are unpersuaded by the State's argument that CASA Lux had sufficient scientific knowledge to qualify as an expert to testify as to the specimen collection process, the testing method used or the accuracy and reliability of the drug test results. To admit drug testing results, evidentiary foundation must be laid to demonstrate the expert has adequate knowledge, by training or education, and sufficient factual information on which to base an opinion. M. R. Evid. 702; *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 48, 289 Mont. 1, 961 P.2d 75. During the termination hearing, the Department did not elicit any testimony regarding CASA Lux's scientific skill, education, or expertise qualifying her to testify regarding the hair and urinalysis drug testing process or specimen analysis. CASA Lux testified only that she had been in contact with the "drug testing people," had received copies of the drug testing reports, and those reports helped form her opinions as to the best interests of the children. Based on this record, we conclude there was inadequate foundation to demonstrate CASA Lux had the requisite knowledge, by training or education, to satisfy the requirements of M. R. Evid. 702.

¶22 Based on the foregoing, we conclude the District Court abused its discretion in admitting the parents' respective drug test results. Having determined the drug test results were not properly admitted into evidence, we next consider whether the District Court abused its discretion is terminating Mother's and Father's parental rights.

¶23    2. *Whether the District Court abused its discretion in terminating Mother's and Father's parental rights.*

¶24    Both parents argue the District Court abused its discretion in terminating their parental rights based on the District Court's admission into evidence of their respective drug test results during the termination hearing. Consequently, both assert the District Court impermissibly relied on these test results to terminate their parental rights. Father further argues there was not clear and convincing evidence his conduct was unlikely to change. Mother also argues the District Court should have considered guardianship or an extension of TLC before terminating her parental rights.

¶25    The State argues the District Court did not abuse its discretion by terminating both parents' parental rights as substantial evidence existed to support the District Court's decision that the parents failed to complete their respective treatment plans. Specifically, the State maintains that even if the drug test results were improperly admitted, Mother's and Father's noncompliance with other aspects of their treatment plans substantially support the District Court's ultimate conclusion to terminate their parental rights.

¶26    It is well established a natural parent's right to care and custody of a child is a fundamental liberty interest which courts must protect with fundamentally fair procedures at all stages of termination proceedings. *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282 (citations omitted). The best interests of the children are of paramount concern, however, and take precedence over parental rights. *In re A.H.D.*, 2008 MT 57, ¶ 13, 341 Mont. 494, 178 P.3d 131. A district court may order termination of the parent-child relationship if "the child is an adjudicated youth in need of care" and (1) "an

appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful" and (2) "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f)(i)-(ii), MCA.

¶27 A treatment plan is an agreement or court order that specifies the actions a parent must take to resolve the conditions that resulted in the need for protective services for the child. Section 41-3-102(30), MCA. Partial or even substantial compliance with a treatment plan is insufficient to preclude termination of parental rights. *In re D.F.*, 2007 MT 147, ¶ 30, 337 Mont. 461, 161 P.3d 825.

¶28 On December 11, 2015, the District Court adjudicated I.M., O.G., and A.D., as youths in need of care. The parents' respective court-approved treatment plans contained four objectives: (1) address chemical dependency issues, (2) attend counseling and attend to mental health needs, (3) attend parenting classes, and (4) communicate with the Department on a regular basis. The record shows each parent completed a chemical dependency evaluation with Antonsen on March 18, 2016. However, after this date, the record clearly reflects that neither parent completed any other aspects of their treatment plans until February 2017, nearly a year later.

¶29 The record supports the District Court's finding that Mother failed to comply with her treatment plan. Mother failed to follow Antonsen's recommendations to address her chemical dependency issues, which included completing either an intensive outpatient or inpatient treatment program; failed to appear for random drug tests; only attended one counseling session and one parenting class, failing to attend any follow-up sessions or

classes; had infrequent contact with the children; and failed to remain in contact with the Department.

¶30 The record also supports the District Court's finding that Father failed to comply with his treatment plan. Father likewise failed to follow Antonsen's recommendations to address his chemical dependency issues, which included inpatient treatment with individual sessions with a provider experienced in treating co-occurring mental health disorders; failed to appear for random drug tests; failed to attend any counseling sessions; only attended one parenting class, failing to attend any follow-up classes; had infrequent contact with A.D.; and failed to remain in contact with the Department.

¶31 Based on the record, Mother and Father failed to comply with their treatment plans. The parents' minimal compliance with some requirements of their respective treatment plans does not negate their substantial lack of compliance and progress with regard to most other requirements of the treatment plans, especially the failure to address their chemical dependency issues. Exempting the parents' drug testing results, which we found to be inadmissible above, substantial evidence supports Mother and Father did not comply with their treatment plans.

¶32 The District Court outlined each parent's non-compliance with their respective treatment plans and their overall lack of success and progress. The District Court then found Mother and Father are not capable of safely parenting I.M., O.G., and A.D., and their condition or conduct which precludes them from doing so is not likely to change within a reasonable time. To "determin[e] whether the conduct or condition of the parents is unlikely to change within a reasonable time" the court must find continuing the parent-child

14

relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA.

¶33 The District Court concluded the conduct or condition of each Mother and Father was unlikely to change based on their lack of commitment to remain drug free, their lack of participation in chemical dependency treatment, their lack of cooperation with the Department, and their lack of motivation to be integrated into the children's daily lives. The District Court found that "if either parent was serious about their future sobriety and regaining custody of their children, he or she could have made time to meet with the case worker and start working on the Department prepared and Court-approved treatment plan." Instead, Mother and Father each unilaterally and inappropriately determined their own treatment plans. At the termination hearing, Father testified he believed the children should never have been removed from their home in the first place. The District Court found this testimony reflected Father's lack of insight as to how his drug abuse put his child at risk and further astutely concluded if Father lacked the insight to see the problems now, it is unlikely he will change to address the problems within a reasonable time.

¶34 Father now argues the District Court's findings are clearly erroneous as he has recently taken steps to complete his court-approved treatment plan. Even if we accept the assertion this demonstrates legitimate progress towards making the necessary changes he needs to make, we must conclude Father failed to demonstrate the District Court's findings are clearly erroneous. When addressing whether a parent's conduct is unlikely to change in a reasonable time, the court must assess the past and present conduct of the parent. *In*

*re E.K.*, 2001 MT 279, ¶ 47, 307 Mont. 328, 37 P.3d 690. We have repeatedly stated that "we do not have a crystal ball to look into to make this determination, so it must, to some extent, be based on a person's past conduct." *E.K.*, ¶ 47 (citations omitted). The District Court specifically focused on Father's lack of commitment to work with the Department to complete his treatment plan over the course of two years and found those issues to be of such a duration and nature as to render him unlikely to make necessary future changes within a reasonable time.

¶35 In determining whether the conditions are likely to change, "the court shall give primary consideration to the physical, mental, and emotional" needs of the child. Section 41-3-609(3), MCA. Father argues his recent commitment to the treatment plan demonstrates his conduct has changed and he is willing and able to give A.D. adequate parenting care. The District Court gave primary consideration to the physical, mental, and emotional needs of A.D. in determining Father's conduct was unlikely to change. Despite the evidence demonstrating some recent progress, Father has failed to demonstrate the District Court was clearly erroneous in finding the conduct or condition rendering him unfit or unable to parent A.D. was unlikely to change within a reasonable time.

¶36 Mother does not dispute the finding her conduct or condition is unlikely to change within a reasonable time. The District Court focused on Mother's lack of commitment to remain drug free, lack of motivation to be integrated into the children's lives, and her lack of cooperation with the Department. Specifically, the District Court found Mother's past conduct demonstrates a lack of interest in parenting the children nearly to the point of abandonment and her belated attempts to remain clean and sober do not indicate her

conduct will likely change within a reasonable time. Based on the admissible evidence before it, the District Court's finding that Mother was unlikely to change was not clearly erroneous. Therefore, even without consideration of the parents' respective drug test results, the District Court did not abuse its discretion in terminating the parents' parental rights as the record supports that both failed to comply with their treatment plans and the conduct or condition rendering them unfit or unable to parent was unlikely to change within a reasonable time.

¶37 Further, we note if a child has been in foster care for fifteen out of the most recent twenty-two months, the best interests of the child are presumed to be served by termination of parental rights. Section 41-3-604(1), MCA. The children have resided with their maternal grandparents continuously for twenty-two months since removal. The parents fail to overcome this presumption; therefore, the District Court did not abuse its discretion in terminating Mother's and Father's parental rights.

¶38 A harmless error does not mandate we reverse a district court judgment; an error must cause substantial prejudice to warrant reversal. *In re S.C.*, 2005 MT 241, ¶ 29, 328 Mont. 476, 121 P.3d 552. Consequently, we conclude, in light of the facts of this case, the District Court's error in admitting the parents' respective drug test results based on § 41-3-112(4), MCA, did not result in substantial prejudice to the parents and does not warrant reversal.

17

**CONCLUSION**

¶39 We conclude the District Court abused its discretion in admitting the parents' respective drug test results through the children's CASA worker. However, the District Court did not abuse its discretion in terminating Mother's and Father's parental rights as even with exclusion of the drug test results, substantial evidence supports Mother and Father failed to address the objectives of their respective treatment plans and the conduct or condition rendering each of them unfit or unable to parent was not likely to change within a reasonable time. Thus, we find admitting the drug test results was harmless error and does not warrant reversal.

¶40 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE