Justice Ingrid Gustafson delivered the Opinion of the Court.
***111 ¶1 B.J. (Father) appeals from the Findings of Fact, Conclusions of Law and Order Terminating Parental Rights issued by the Nineteenth Judicial District Court, Lincoln County, on December 12, 2018. We affirm.
¶2 We restate the issues on appeal as follows:
1. Whether Father was denied due process when the District Court terminated Father's parental rights.
2. Whether Father's treatment plan was appropriate.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 The Montana Department of Health and Human Services, Child and Family Services Division (Department), became involved with B.J.J., Jr. (Child) when it learned Mother and Father were not actively parenting five-year old Child, but had left him in the care of his maternal grandmother without providing a power of attorney or any ***112 financial support.[1] *492 ¶4 On April 6, 2017, the Department filed a petition for emergency protective services (EPS), appointment of a guardian ad litem, adjudication of Child as a youth in need of care (YINC), and for temporary legal custody (TLC). At the time of the petition, Child had been residing in Grandmother's home in Montana for some time, Mother was homeless and allegedly using illegal drugs, and Father was incarcerated in prison in Nevada. Father was appointed counsel to represent him. The show cause hearing was held on May 15, 2017. Although Father was still incarcerated and not present at the hearing and had not yet been personally served with the petition, his counsel represented he had spoken to Father and that Father did not agree with all of the allegations contained in the affidavit, but did not oppose the relief sought by the Department. At the time, as Father was still incarcerated in Nevada, he was not in a position to parent Child. At the conclusion of the hearing, the District Court granted the requested show cause relief, adjudicated Child a YINC, granted the Department TLC for a period of six months, and indicated it would allow Father to move the court to rescind or amend its order and relitigate the petition after Father was served should he so desire. Father was served on May 22, 2017. The court followed its oral order with a written order on June 5, 2017.
¶5 Father was released from prison in July 2017. He contacted Child Protection Specialist (CPS) Weber in mid-August and reported he was living with his father in Nevada and working two jobs at McDonald's and Dairy Queen. CPS Weber provided Father with his contact information as well as that of Father's attorney. CPS Weber also sent Father a copy of the Department's proposed treatment plan. CPS Weber again spoke with Father via telephone in October 2017. Father reported he had not yet begun the tasks of his treatment plan but was in compliance with his probation and in conjunction therewith was working, attending some counseling, and submitting to drug testing. CPS Weber requested Father sign and return the treatment plan which Father indicated he would. CPS Weber also discussed with Father the importance of Father maintaining contact with him and his ***113 attorney as well as Father's need to begin to build a relationship with Child by sending him pictures, cards, and letters, after which CPS Weber would then establish telephone contact between Father and Child. Following this conversation, CPS Weber confirmed with Father's probation officer that Father was in compliance with his probation. CPS Weber did not thereafter follow up with Father's probation officer as he believed Father to be discharging from probation in October 2017.
¶6 When Father failed to sign and return his treatment plan as he indicated he would, the Department filed a written motion to approve Father's treatment plan. The District Court held a hearing on this motion on February 12, 2018. Without objection, CPS Weber testified as to the specific goals and tasks in the treatment plan and how they were designed to assist Father to be able to safely parent Child. At the conclusion of the hearing, the District Court approved the Department's proposed treatment plan for Father. Thereafter, Father did not contact CPS Weber further. CPS Weber, however, made repeated attempts to contact Father by telephone without getting an answer. When CPS Weber did get an answer at the telephone number Father had provided, it was a different person's voicemail. At the extension of the TLC hearing on April 16, 2018, Father's counsel indicated he had had no contact from Father, and therefore could not advocate Father's position on the matter.
¶7 The Department filed a motion to approve permanency plan and for termination of Father's parental rights on October 23, 2018. At this time, Father was again incarcerated in Nevada. Father was re-assigned counsel and on October 25, 2018, Brianne Franklin filed her notice of appearance as Father's counsel. On October 28, 2018, while still incarcerated, Father was personally served with the termination petition and notice of the termination hearing set for December 3, 2018. At his counsel's request, the District Court attempted to contact Father by phone at the commencement of the termination *493 hearing on December 3, 2018.[2] Father did not answer, and the court proceeded with the hearing. After CPS Weber testified on direct examination, the court made another attempt to reach Father by phone. Father answered this call and thereafter appeared telephonically through the remainder of the hearing. At the hearing, CPS Weber testified ***114 extensively to Father's failure to complete any of his treatment plan tasks, Father's failure to maintain contact with CPS Weber throughout the case, and Father's failure to make even minimal progress in rebuilding a relationship with Child. Upon cross-examination, although he commended Father for appearing telephonically at the hearing, CPS Weber did not believe that if Father was in a new position in his life where he was now prepared to work his treatment plan that such would be in Child's best interest. CPS Weber explained that Father had been provided opportunity over the past two years to work on the issues which precluded him from safely parenting and that he had not shown much interest in his son or any desire to parent him. CPS Weber testified, given Father's complete lack of progress to date, it was not in Child's best interest to wait longer for permanency. Father declined to testify. At the conclusion of the hearing, Father requested the court deny the termination petition and instead extend TLC as Father was in a new position in his life where he was now prepared to work his treatment plan.
¶8 The District Court then determined Father did not successfully complete his treatment plan and the condition rendering him unfit, unable, or unwilling to parent was not likely to change within a reasonable time and terminated his parental rights. Father appeals.
STANDARD OF REVIEW
¶9 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. In re K.A. , 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. The Department has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been satisfied. In the context of parental rights cases, clear and convincing evidence is the requirement that a preponderance of the evidence be definite, clear, and convincing. In re K.L. , 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. This Court reviews a district court's findings of fact for clear error and its conclusions of law for correctness. In re M.V.R. , 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court a mistake was made. In re J.B. , 2016 MT 68, ¶ 10, 383 Mont. 48, 368 P.3d 715. "To reverse a district court's evidentiary ruling for an abuse of discretion, this Court must determine the district court either acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."
***115 In re I.M. , 2018 MT 61, ¶ 13, 391 Mont. 42, 414 P.3d 797 (citing In re O.A.W. , 2007 MT 13, ¶ 32, 335 Mont. 304, 153 P.3d 6 ).
¶10 Father asserts this Court has "adopted a diminished appellate review standard for reviewing a district court's findings of fact regarding the required statutory criteria." Father contends that the clearly erroneous standard applied by this Court with regard to findings of fact is inconsistent with the United States Supreme Court's holding in Santosky v. Kramer , 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982), that the constitutionally required burden of proof for establishing criteria for termination is no less than clear and convincing evidence. The Department asserts that Father's argument "conflates evidentiary burdens of proof with appellate standards of review." We agree with the Department. In abuse and neglect cases, the burden of proof generally lies with the Department. Section 41-3-422(5)(a), MCA. Thus, the Department must prove by clear and convincing evidence all required elements for termination of a parent's rights. The district court, as the fact finder, evaluates if the Department has met its burden of presenting clear and convincing evidence regarding *494 all required elements for termination of a parent's rights. The district court's findings of fact and conclusions of law summarize the court's evaluation as to whether the Department has met its burden of proof that a preponderance of the evidence is definite, clear, and convincing. Upon appeal of a district court's findings of fact, conclusions of law, and order terminating a parent's parental rights, this Court does not substitute its judgment as to the strength of the evidence for that of the district court. In re A.N.W. , 2006 MT 42, ¶ 29, 331 Mont. 208, 130 P.3d 619. Rather, this Court reviews factual findings to determine if they are clearly erroneous, conclusions of law for correctness, and that the evidence found by the district court on a whole satisfies that a preponderance of the evidence is definite, clear, and convincing.
DISCUSSION
¶11 1. Whether Father was denied due process when the District Court terminated Father's parental rights.
¶12 Father asserts he was denied due process because he was not properly served and was denied notice and an opportunity to be heard, he received ineffective assistance of counsel, and the Department failed to make reasonable efforts to reunify him with Child.
¶13 Notice and Opportunity to be Heard. As a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures, ***116 termination procedures must satisfy the Due Process Clause of the Fourteenth Amendment. In re C.J. , 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282 (citations omitted). For a parent to establish a claim for violation of due process, a parent must demonstrate how the outcome would have been different had the alleged due process violation not occurred. See In re A.N.W. , ¶¶ 38, 47. This Court agrees with Father that "[k]ey components of a fair proceeding are notice and an opportunity to be heard." In re C.J. , ¶ 27 (citing In re T.C. and W.C. , 2001 MT 264, ¶ 22, 307 Mont. 244, 37 P.3d 70 ). In this case, however, Father was afforded fundamentally fair procedures and had equal opportunity to present evidence and test the evidence entered by the Department.
¶14 With regard to his claim of lack of notice and opportunity to be heard, Father primarily takes issue with the adjudication of Child as a YINC prior to Father being personally served with the petition seeking adjudication and TLC. Review of the adjudicatory proceeding leads to the conclusion that Father was provided a full and fair opportunity to contest the petition, but instead stipulated to the relief sought therein. At the hearing on May 15, 2017, Father's counsel represented he had spoken to Father and that Father had "no objection to the relief" sought, although he did not agree with all the allegations contained in the affidavit supporting the petition. Recognizing Father had not yet been personally served, the District Court indicated that although it was adjudicating Child a YINC and granting the Department TLC for a period of six months, it would leave the record open so that Father could, after service, raise objections and request the court amend or rescind the adjudication and TLC order. Thereafter, Father was personally served with the petition seeking adjudication and TLC on May 22, 2017. Father made no further objections or motions to amend or rescind the adjudication and TLC order. Further, Father has never asserted that his counsel's representations at the adjudicatory hearing were false, or disputed the sufficiency of evidence for adjudication and TLC. Finally, Father has not established how the outcome would have been different had the District Court held the adjudicatory hearing after Father was served on May 22, 2017. Father has failed to establish a violation of his right to due process based on his assertion of lack of notice and opportunity to be heard.
¶15 Ineffective Assistance of Counsel (IAC) Claim. Father asserts his appointed counsel, Stephen Dalby (Dalby), rendered ineffective assistance. We evaluate two nonexclusive benchmark factors in assessing the effectiveness of counsel in abuse and neglect ***117 proceedings: (1) counsel's training and experience, and (2) the quality of counsel's advocacy during the proceedings. *495 In re A.S ., 2004 MT 62, ¶¶ 26-27, 320 Mont. 268, 87 P.3d 408. To establish an IAC claim, a parent must show he suffered prejudice resulting from counsel's ineffective representation. In re A.S. , ¶ 31. Father does not challenge Dalby's training and experience; instead he claims that the quality of Dalby's advocacy was ineffective. Father asserts Dalby was ineffective by representing Father while simultaneously representing two other natural fathers involved in companion proceedings.[3] Father also asserts Dalby was ineffective for not objecting to adjudication prior to service, failing to object to the appropriateness of the treatment plan, failing to arrange Father's telephonic appearance at any proceedings, and failing to make objections and present witnesses or evidence throughout the case. From our review of the record, we do not find Father's counsel to have provided ineffective assistance.
¶16 While Father asserts Dalby had some type of conflict in representing all three fathers in the companion cases, he fails to identify any actual conflict that existed that would require each father's consent to Dalby's representation. M. R. Pro. Cond. 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." If a "concurrent conflict of interest" exists, a lawyer "may represent a client if ... each affected client gives informed consent, confirmed in writing." M. R. Pro. Cond. 1.7(b). Although Father cites M. R. Pro. Cond. 1.7, he does not assert any particular conflict of interest existed in Dalby's representation of all the fathers in the companion cases nor does the record reveal any conflict. The other fathers had no parenting interest or relationship with Child and the three fathers' separate interests in parenting their respective children were not in conflict with one another.
¶17 Father asserts Dalby should have moved to continue the adjudicatory hearing until he was personally served. While Dalby could have made such an objection, Father has not established it was ineffective assistance not to do so. Pursuant to In re K.B. , 2016 MT 73, ¶ 19, 383 Mont. 85, 368 P.3d 722, failure to object to adjudication is not IAC when sufficient evidence supports the adjudication of the child as ***118 a YINC. As previously indicated, Father has never asserted the evidence was insufficient to support the District Court's adjudication of Child as a YINC. Father has also never contested his stipulation to the adjudicatory relief.
¶18 Finally, Father asserts IAC based on counsel failing to object to the appropriateness of the treatment plan, failing to arrange Father's telephonic appearance at any proceedings, and failing to make objections and present witnesses or evidence throughout the case. Given Father's lack of engagement with the Department and his lack of contact with counsel throughout the course of this case, his IAC assertions are unavailing. When not incarcerated, Father was basically out of contact and unreachable by his counsel or the Department. Father had contact information for his counsel. Further, Dalby had sent Father the proposed treatment plan and was able to delay the District Court's consideration of it for a period of time as he had not been able to contact Father to discuss it. Father did not answer the telephone at the contact number he provided counsel and did not keep counsel apprised of his contact information when it changed. It is not realistic to expect counsel to make objections or particularly advocate for a client when counsel is unable to locate or contact the client and the client fails to contact the attorney. Without being able to reach Father, Dalby could not make objections, present evidence, or advocate to the court any client progress or position. A parent cannot establish IAC through his own failure to contact and engage with counsel. In this case, Dalby rendered legal services which were as effective as possible given Father's lack of contact and engagement with him.
¶19 Reasonable efforts. Finally, Father asserts his due process rights were violated *496 by the Department's failure to engage in reasonable efforts to reunify him with Child. Specifically, Father argues the Department failed to make reasonable efforts by failing to determine whether his home was safe and appropriate for Child, follow up with his probation officer to confirm compliance with his Nevada conditions of release, definitively determine why Father was incarcerated, and provide Father services, referrals, and information.
¶20 In termination proceedings, § 41-3-609(1)(f), MCA, protects a parent's fundamental right to the care and custody of a child. In re D.B. , 2007 MT 246, ¶ 17, 339 Mont. 240, 168 P.3d 691. A district court may only terminate the parent-child relationship of an adjudicated YINC if it finds "by clear and convincing evidence that: (1) an appropriate court-approved treatment plan was not complied with by the parents or was not successful; and that (2) the conduct or condition of the parents rendering them unfit was unlikely to change within a ***119 reasonable time." In re X.M. , 2018 MT 264, ¶ 18, 393 Mont. 210, 429 P.3d 920 (citing § 41-3-609(1)(f)(i), (ii), MCA ).
¶21 Since "a natural parent's right to care and custody of a child is a fundamental liberty interest," a district court "must adequately address each applicable statutory requirement" before terminating an individual's parental rights. In re A.T ., 2003 MT 154, ¶ 10, 316 Mont. 255, 70 P.3d 1247 (citing In re J.N. , 1999 MT 64, ¶ 12, 293 Mont. 524, 977 P.2d 317 ). One such requirement is found in § 41-3-423(1), MCA, which requires the Department to "make reasonable efforts to prevent the necessity of removal of a child from the child's home and to reunify families that have been separated by the state." Although determination of whether the Department made reasonable efforts is not a separate requirement for termination, it is a predicate for finding that the conduct or condition rendering a parent unfit, unwilling, or unable to parent is unlikely to change within a reasonable time-one of the factors required for termination of a parent's rights. See § 41-3-609(1)(f)(ii), MCA ; In re D.B ., ¶ 25.
¶22 To meet its requirements to provide reasonable efforts, the Department must in good faith develop and implement treatment plans designed "to preserve the parent-child relationship and the family unit"[4] and must, in good faith, assist a parent in completing his treatment plan. In re D.B. , ¶ 33 ; see also In re T.D.H. , 2015 MT 244, ¶ 42, 380 Mont. 401, 356 P.3d 457. From our review of the record, we conclude the Department provided reasonable efforts as required by § 41-3-423(1), MCA.
¶23 Pursuant to the Department's policy, when a child is removed from a custodial parent, the non-custodial parent is the first placement option considered by the CPS. See Child and Family Services Policy Manual, § 304-1. Father asserts the Department made no efforts to determine whether his home was safe and appropriate for Child. At the point where the Department became involved with this family, Child was residing with his maternal grandmother with whom he had resided on and off for the majority of his life and with whom he had been residing continuously for approximately 14 months.[5] Moreover, Father was incarcerated so he was not a viable first placement option.
***120 Upon Father's release, there is nothing in the record indicating that Father desired Child be placed with him. From the testimony and affidavit of CPS Weber regarding his interactions with Father, the record indicates Father agreed he needed to address mental health, chemical dependency, housing and stability issues, and build a relationship with Child before he could safely parent Child. Father also claims the Department failed to follow up with his probation officer to confirm compliance with his conditions of release or provide him services, referrals, or information as to where he could obtain services related to his treatment plan tasks. This assertion is also not supported by the record. After Father reported engagement in some therapy and drug testing through his probation, *497 CPS Weber contacted Father's probation officer in October 2017 and confirmed Father was compliant with his conditions of release. CPS Weber did not further follow up with the probation officer as he believed Father was discharging from supervision that month. Again, after this time, Father basically discontinued communicating with the Department. Although CPS Weber repeatedly attempted to contact Father at the number Father provided, Father did not answer. When CPS Weber reached voicemail, it indicated it was the voicemail box of someone other than Father. It was not until a few days before the termination hearing that Father's whereabouts became known again when he was re-incarcerated.
¶24 We have long held that a parent has an obligation to avail himself of services arranged or referred by the Department and engage with the Department to successfully complete his treatment plan. In re R.J.F. , 2019 MT 113, ¶ 38, 395 Mont. 454, 443 P.3d 387 ; In re C.B. , 2014 MT 4, ¶¶ 19, 23, 373 Mont. 204, 316 P.3d 177 ; In re D.F., 2007 MT 147, ¶ 30, 337 Mont. 461, 161 P.3d 825 ; In re T.R. , 2004 MT 388, ¶ 26, 325 Mont. 125, 104 P.3d 439 ; In re L.S. , 2003 MT 12, ¶ 11, 314 Mont. 42, 63 P.3d 497. While "engaging in reasonable efforts requires more than merely suggesting services to a parent and waiting for the parent to then arrange those services for [him]self," they do not require herculean efforts. In re R.J.F. , ¶ 37 ; see also In re A.G. , 2016 MT 203, ¶ 17, 384 Mont. 361, 378 P.3d 1177. In order for the Department to make reasonable efforts, the parent has a corresponding obligation to engage with the Department and maintain sufficient contact with the Department for the Department to be able to assist the parent to obtain the treatment and services necessary for the parent to safely parent. Here, Father cannot establish the Department failed to make reasonable efforts to reunify him with Child through his own failure to remain in contact and engage with the ***121 Department.
¶25 2. Whether Father's treatment plan was appropriate.
¶26 Father, for the first time on appeal, claims that his court-ordered treatment plan was inappropriate and asserts plain error review is appropriate. Father contends the treatment plan ordered by the court requiring mental health, chemical dependency, housing and stability, and parenting and visitation tasks was inappropriate as "the only problems/conditions related to the abuse/neglect of [Child] by Father were that he left his child in the care of Grandmother without a power of attorney and without providing support."
¶27 Plain error review is discretionary and may be granted where an appellant shows: (1) the asserted error implicates a fundamental right, and (2) not reviewing the asserted error may result in a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or may compromise the integrity of the judicial process. In re M.K.S. , 2015 MT 146, ¶¶ 13-14, 379 Mont. 293, 350 P.3d 27. We employ plain error review sparingly, on a case-by-case basis. In re J.S.W. , 2013 MT 34, ¶ 16, 369 Mont. 12, 303 P.3d 741.
¶28 Although the asserted error implicates a fundamental right-the right to parent one's child-Father has failed to establish plain error review is warranted. At the outset of this matter, Father was appointed counsel and had full opportunity to contest the adjudication of Child as a YINC. Instead of contesting that his placement of Child in the care of an appropriate relative-maternal grandmother-was insufficient to establish the need for EPS pursuant to §§ 41-3-301, 41-3-427, and 41-3-432, MCA, or to establish Child as a YINC as defined in § 41-3-102(34), MCA, Father stipulated to the relief requested by the Department-EPS and adjudication of Child as a YINC. It is undisputed that Father and his counsel received the proposed treatment plan. Father had contact information for his counsel and the Department. Father also spoke with CPS Weber in August and October 2017. During those conversations CPS Weber discussed the requirements of Father's treatment plan. Father acknowledged to CPS Weber he had received the treatment plan, understood its requirements, and intended to sign it and return it to CPS Weber. Father related to CPS Weber he had not yet had time to work on any of *498 the treatment plan tasks. Father did not express objection to the treatment plan or any of the tasks required therein or request assistance in lining up services. Father did not question the appropriateness of his treatment plan either before or after it was ordered. Father was represented by counsel, had contact information for his counsel, and had full opportunity to seek advice and confer with ***122 counsel if he had any questions, concerns, or objections to the treatment plan. Father never requested clarification, modification, or amendment to his treatment plan. Finally, attorney Franklin, who took over Father's representation from Dalby and against whom Father has not made any IAC claims, did not raise any objection to or issue regarding the treatment plan during the termination hearing. Through Father's failure to take advantage of the legal representation appointed to him to contest or object to his treatment plan and through his failure to express anything other than agreement with his treatment plan throughout the entire course of this case, Father has waived his right to appeal the appropriateness of the plan. The District Court's approval of Father's treatment plan did not constitute a manifest miscarriage of justice or compromise the integrity of the proceedings.
CONCLUSION
¶29 Father was not denied due process when the District Court terminated his parental rights, and plain error review regarding the appropriateness of Father's treatment plan is not warranted.
¶30 Affirmed.
We concur:
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JIM RICE, J.

Child, along with Mother's two other children, had been residing with Grandmother who expressed concern Mother could attempt to take the children from her care. There is nothing in the record suggesting Child was abused or neglected or at risk of such in Grandmother's care. Father did not contest show cause or adjudication of Child as a youth in need of care nor does he appeal this issue.

On December 3, 2018, Father's counsel filed a motion requesting Father be permitted to appear telephonically at the hearing as he was now residing at a sober living home in Nevada.

Three children were involved in related proceedings. Mother was the natural mother of all three children, but each had a different natural father. While each of the children's cases was assigned a separate case number, all cases were heard simultaneously throughout the proceedings.

Father's assertion that his treatment plan was not appropriate will be discussed under Issue 2.

Further, the Department had alleged, and Father did not contest, that Mother and Father had placed Child in the care and custody of Grandmother.