FILED

05/19/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0426

DA 19-0426

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 127

IN THE MATTER OF:

C.S.,

A Youth in Need of Care.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADN 19-2(B)
Honorable Elizabeth Best, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jennifer Dwyer, Avignone, Banick & Williams, Bozeman, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Damon Martin, Assistant
Attorney General, Helena, Montana

Joshua A. Racki; Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  April 15, 2020

Decided:  May 19, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     A.B.-A. (Mother) appeals from the termination of her parental rights to her child C.S. issued July 3, 2019, by the Eighth Judicial District Court, Cascade County. We affirm.[1]

¶2     We restate the issues on appeal as follows:

*1. Whether C.S. was properly determined to be an abused or neglected child; and*

*2. Whether the District Court abused its discretion in determining reunification efforts were not necessary and terminating Mother's parental rights in relation to C.S. due to chronic and severe neglect.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Mother has a substantial history of chemical dependency issues requiring intervention from the Department of Public Health and Human Services, Child and Family Services Division (the Department). Prior to this cause, the Department had previously removed C.S. on three occasions. C.S. was first removed on May 8, 2015. Mother then completed a treatment plan and C.S. was returned to her and the cause was closed December 10, 2015. In May 2016, the Department received a report of domestic violence involving Mother, and C.S. was again removed from her care on May 5, 2016. Mother again completed a treatment plan and C.S. was returned to her care on April 10, 2017, and that cause was then closed. Within weeks, Mother relapsed on methamphetamine. C.S. was removed for a third time in June 2017. That cause was closed on August 31, 2018,

---

[1] We note there is companion case DA 19-0425 (*In re D.D.*) in which we issue a separate opinion.

2

after Mother completed inpatient treatment, and C.S. later returned to Mother's care. On December 5, 2018, the Department received another report alleging Mother was using methamphetamine and domestic violence was occurring in her home. C.S. was again removed from Mother's care.

¶4 On January 4, 2019, the Department filed its Petition for Emergency Protective Services (EPS), Adjudication of Youth as Youth in Need of Care (YINC), Request for Finding of No Reasonable Efforts and Motion for Permanent Legal Custody, Termination of Parental Rights and Request for Hearing, wherein the Department alleged physical neglect and sought a finding from the court that it be relieved of the obligation to provide reasonable efforts to preserve and reunify the family under § 41-3-423(2)(a), MCA.[2] The Department contended a treatment plan was not required as Mother met the criteria of § 41-3-609(1)(d), MCA, by subjecting C.S. to the aggravating circumstance of chronic, severe neglect, as provided in § 41-3-423(2)(a), MCA, by her continued pattern of relapse and domestic violence. Oddly, despite prior representations to the contrary in the

_____

[2] Although original petitions were filed in each ADN 19-001 (*In re D.D.*) and ADN 19-002 (*In re C.S.*), the petitions and supporting affidavits were identical in content and did not set forth individualized circumstances of each child and the circumstances surrounding the basis of the allegations of neglect provide no description of impact on each child:

> The allegations are PHYSICAL NEGLECT. There are concerns of drug use and domestic violence in the home. Birth mother admits that she had relapsed and was using methamphetamines. Birth mother denied that she is using currently but refused to provide a hair sample for the Department because she would test positive. Birth mother also admitted that she broke her hand when she hit her spouse in the head. Birth mother has a history of drug use.

Department's motions to close the prior causes and despite the CPS workers' supporting affidavits to the contrary and return of C.S. to Mother's care following her completion of prior treatment plans, the State also alleged Mother had failed to successfully comply with her treatment plans previously ordered in her three prior DN cases—ADN-15-132, DDN-16-155, and BDN-17-185.

¶5 On January 7, 2019, Judge Pinski issued an Order to Show Cause, Granting EPS, Notice of Show Cause and Adjudicatory Hearing, finding probable cause to believe C.S. was abused or neglected or in danger of being so—based on Mother's admission to relapsing on methamphetamine and that domestic violence occurred in her home—such that immediate protection was required. On January 23, 2019, Judge Pinski held a joint show cause/adjudication/termination hearing. Mother stipulated to show cause but requested the termination hearing be continued. Judge Pinski then found, based on Mother's stipulation, there was sufficient probable cause and adjudicated C.S. as a YINC. Mother did not object to this adjudication. It was then agreed to transfer this case to Judge Best. Judge Pinski followed up with a written order of January 28, 2019. In that order, Judge Pinski found that Mother stipulated to adjudication of C.S. as a YINC; that C.S. was at substantial risk of physical neglect due to Mother's ongoing substance use, lack of protective capacities, and her inability to meet his basic needs; and adjudicated C.S. as a YINC. Mother was served with this order and did not file any objection or motion to amend the order based on her assertion she had only stipulated to show cause.

4

¶6 Judge Best assumed the cause and set hearing on the Department's petition for termination and request that it not be required to provide reasonable efforts toward reunification on February 14, 2019. Mother requested continuance of the hearing as she was enrolled in inpatient chemical dependency treatment at Montana Chemical Dependency Center (MCDC). The hearing was ultimately rescheduled to April 25, 2019. At hearing on April 25, 2019, the State acknowledged Mother had completed most of the MCDC program—having left after three weeks—and was engaged in chemical dependency treatment. Mother requested the matter be continued for six to eight weeks. The District Court then indicated it would hold the matter in abeyance until June 20, 2019.

¶7 At hearing on June 20, 2019, Mother's counsel asserted Mother understood there was no adjudication of C.S. as a YINC—as Mother had not stipulated to such—and the Department was going straight for termination. The District Court reserved ruling on whether reunification services were required until the end of the hearing. At hearing, the State and Mother presented evidence that Mother had arranged for her own chemical dependency treatment through MCDC and Misfits, Mother was in compliance with her treatment program, and Mother had been referred to anger management counseling and was committed to attending. Other than paying for the drug patch after Mother requested the Department to do so, the Department was minimally involved with Mother and not providing her other services. CPS Jessica Armstrong did acknowledge Mother was "very committed to attending counseling and anger management and doing what she needs to be doing. This is probably the most engaged I've seen her." The Department, however, based

5

on Mother's prior repeating cyclical pattern—Mother's relapse, Department intervention, Mother's improvement, Department's dismissal, Mother's relapse—did not trust Mother could maintain the necessary abstinence from drug use to successfully parent over an extended period of time. CPS Armstrong testified Mother had not done or said anything this cycle that gave her reason to believe Mother had a better likelihood of maintaining long-term sobriety. CPS Armstrong testified Mother "does well under supervision, but once the Department is out of her life, she relapses again."

¶8 At the conclusion of the hearing, the District Court implicitly determined C.S. was an abused or neglected child, found the Department need not make reasonable efforts to provide preservation or reunification services due to Mother's chronic, severe neglect of C.S., and terminated Mother's parental rights to C.S. Mother appeals.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. *In re B.J.J.*, 2019 MT 129, ¶ 9, 396 Mont. 108, 443 P.3d 488; *In re A.S.*, 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848; *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. The Department has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re B.J.J.*, ¶ 9. In the context of parental rights cases, clear and convincing evidence is the requirement that a preponderance of the evidence be definite, clear, and convincing. *In re B.J.J.,* ¶ 9; *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. This Court reviews a district court's findings of fact for clear error and conclusions of law for correctness. *In re B.J.J.,*

6

¶ 9; *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058. "A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court a mistake was made." *In re B.J.J.*, ¶ 9. "To reverse a district court's evidentiary ruling for an abuse of discretion, this Court must determine the district court either acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re B.J.J.*, ¶ 9 (quoting *In re I.M.*, 2018 MT 61, ¶ 13, 391 Mont. 42, 414 P.3d 797).

## DISCUSSION

¶10    1. *Whether C.S. was properly determined to be an abused or neglected child.*

¶11    Mother asserts the District Court did not hold fundamentally fair procedures, erroneously finding C.S. to be a YINC based upon a stipulation Mother did not make. The State counters that adjudication of a child as a YINC is only required when termination is sought pursuant to § 41-3-609(1)(f), MCA. The State asserts termination pursuant to § 41-3-609(1)(a) through (e), MCA, only requires there be a "determination" that a child is abused or neglected.

¶12    As the care and custody of a child is a fundamental liberty interest protected by fundamentally fair procedures, termination procedures must satisfy the Due Process Clause of the Fourteenth Amendment. *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282. Sections 41-3-601 through -612, MCA, provide the procedures and criteria by which the parent-child relationship may be terminated. These provisions are only operative when

7

there has first been a determination that a child has been abused or neglected as defined in § 41-3-102, MCA, or adjudicated as a YINC, depending upon which statutory basis is asserted for the termination. The threshold consideration when involuntary termination is sought pursuant to § 41-3-609(1)(f), MCA, is whether the child has been adjudicated a YINC. An involuntary termination, however, sought pursuant to §§ 41-3-609(1)(d) and -423(2)(a), MCA, does not require that the child be adjudicated as a YINC, only that it be determined the child was abused or neglected. *See In re C.B.*, 2019 MT 294, ¶ 25, 398 Mont. 176, 454 P.3d 1195. Thus, the issue herein is whether in this proceeding the District Court properly determined C.S. to be abused or neglected while providing Mother fundamentally fair procedures.

¶13 For a parent to establish a claim for violation of due process, a parent must demonstrate how the outcome would have been different had the alleged due process violation not occurred. *See In re A.N.W.*, 2006 MT 42, ¶¶ 38, 47, 331 Mont. 208, 130 P.3d 619. This Court has found that "[k]ey components of a fair proceeding are notice and an opportunity to be heard." *In re C.J.*, ¶ 27. In this case, Mother was afforded fundamentally fair procedures and had equal opportunity to present evidence and test the evidence entered by the Department. Mother primarily takes issue with the adjudication of C.S. as a YINC due to the District Court's mischaracterization of her stipulation. Mother appeared at the joint show cause/adjudication/termination hearing where she stipulated to show cause and requested continuance of the termination proceeding. The District Court orally advised Mother he accepted her stipulation and, based on her history with the Department and her

8

stipulation, adjudicated C.S. a YINC. Mother had full and fair opportunity to object to the court's misunderstanding of her stipulation, clarify her stipulation, and contest the adjudication. She did not. Further, after the District Court issued its written order, Mother did not file any pleading or document to advise the court of its misperception or request amendment or further hearing to determine the matter. This certainly undermines Mother's current position on this issue.

¶14 At the outset of the termination proceeding, Mother's counsel indicated Mother understood there was no adjudication of C.S. as a YINC—as Mother had not stipulated to such—and the Department was going straight for termination. This representation indicates Mother understood the Department would have to present evidence to at least support a determination C.S. was an abused or neglected child to prove termination pursuant to §§ 41-3-609(1)(d) and -423(2)(a), MCA—the basis under which the Department sought termination. Mother had full and fair opportunity to contest the Department's evidence and present her own evidence in opposition to that presented by the Department. At hearing, the Department provided evidence of Mother's admission of relapse and domestic violence in her home, as well as evidence of its substantial and cyclical involvement with Mother since at least 2015—including evidence of Mother's repeated relapses and domestic violence issues and her inability to provide adequate care for C.S. during such periods, and evidence of her engagement with the Department during each intervention, followed by her subsequent failures to maintain any long-term sobriety despite the Department's interventions. Mother herself presented evidence she had put

C.S. in dangerous situations as a result of her inability to stop using drugs. The District Court noted the chronicity of Mother's drug addiction—"years and years and years." While perhaps not stated as explicitly as possible, it is clear from the District Court's Order of July 3, 2019, that from the evidence presented in this cause, it determined C.S. to be abused or neglected and continuation of the parent-child relationship "will likely result in *continued* abuse or neglect." (Emphasis added.) Thus, regardless of the court's initial misperception of Mother's stipulation and arguably the lack of an adjudication as a YINC, the District Court properly determined C.S. to be abused or neglected as required pursuant to §§ 41-3-609(1)(d) and -423(2)(a), MCA.

¶15 2. *Whether the District Court abused its discretion in determining reunification efforts were not necessary and terminating Mother's parental rights in relation to C.S. due to chronic and severe neglect.*

¶16 Usually, before seeking termination of parental rights the Department must engage in reasonable efforts to reunify the family. Section 41-3-423(1), MCA. Pursuant to § 41-3-609(1)(d), MCA, however, the court may terminate parental rights without providing reasonable efforts upon a finding that the parent has subjected a child to the circumstance listed in § 41-3-423(2)(a), MCA—subjecting a child to the aggravated circumstance of chronic, severe neglect. Here, the Department sought termination of Mother's parental rights pursuant to §§ 41-3-609(1)(d) and -423(2)(a), MCA, and sought determination by the court that it was not required to provide Mother reasonable efforts.

¶17 Mother asserts the District Court abused its discretion by finding Mother had subjected C.S. to aggravating circumstances—chronic, severe neglect— because of her

10

ongoing struggle with substance abuse, thereby relieving the Department from providing reunification efforts and justifying termination of her parental rights. Mother asserts the conduct alleged by the Department did not rise to the level of chronic, severe neglect and the District Court's findings to the contrary were not supported by evidence presented at the termination hearing. Mother asserts there were no allegations C.S was not provided for in the home, that he was dirty or unkempt, or that Mother's relapse occurred when C.S. was present. Mother's assertions are not persuasive.

¶18 Mother does not seriously dispute she has a lengthy history of involvement with the Department based on her ongoing substance abuse and domestic violence occurring in her home, which has repeatedly rendered her unable to safely parent C.S. On at least three prior occasions, C.S. was removed from mother's care and adjudicated a YINC based on Mother's inability to provide adequately for his care in a violence-free setting when using or relapsing on methamphetamine. With this intervention, Mother admitted she had again relapsed and that she had engaged in domestic violence in her home. She also stipulated that EPS services, which included removal of C.S. from her home and placement in a protective setting, were needed. The repeated history of Mother subjecting C.S. to abuse or neglect because of her ongoing substance use and violence occurring in her home, together with her admission at the outset of this cause that she had relapsed and that domestic violence occurred in her home, provide substantial support in the record for the District Court's determination that Mother subjected C.S. to chronic, severe neglect. This finding is further supported by CPS Armstrong's testimony regarding C.S.'s instability

11

when in Mother's care and how he becomes increasingly aggressive and his behaviors decline when in Mother's care. Finally, this finding is buttressed by Mother's own testimony at the termination hearing that she has basically neglected C.S. since his conception, first using methamphetamine while pregnant, then while breast feeding, and extending through to the present with her inability to stop using drugs. The District Court did not abuse its discretion in terminating Mother's parental rights to C.S. in this instance.

## CONCLUSION

¶19 C.S. was properly determined to be an abused or neglected child. Further, Mother was not denied due process when the District Court did not abuse its discretion in determining reunification efforts were not necessary and terminating Mother's parental rights in relation to C.S. due to chronic and severe neglect.

¶20 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR