FILED

06/30/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0688

DA 18-0688

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 169N

IN THE MATTER OF:

R.B.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDI 2018-32
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Christopher D. Abbott, Assistant Attorney General, Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney, Katie Jerstad, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  June 10, 2020

Decided:  June 30, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 R.B. appeals from the District Court's order of involuntary commitment based upon mental disorder. Section 53-21-102(7) through -127(2), MCA. After a two-day trial, a jury determined that R.B. suffered from a mental disorder and required commitment, finding specifically, as the verdict form was summarized by the District Court, that R.B., "due to his mental disorder, was substantially unable to provide for his own basic needs of food, clothing, shelter, health or safety; was an imminent threat of injury to [himself] or to others because of his acts or omissions; and will if untreated, predictably result in deterioration of his mental condition to the point at which he will become a danger to self or others or will be unable to provide for his own basic needs of food, clothing, shelter, health or safety."[1] Immediately after entry of the verdict, the District Court conducted a dispositional hearing and entered its findings of fact, conclusions of law and an order. The District Court found that R.B.'s "treatment needs require psychiatric treatment in a long

---

[1] The jury expressly did <u>not</u> find that R.B. had "recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others."

2

term, secure, structured in-patient facility," and that the Montana State Hospital (MSH) was the least restrictive alternative available to meet R.B.'s needs, because it was "the only alternative available to provide the required level of security." R.B. was committed to MSH for a period not to exceed 90 days.

¶3 R.B. is 64 years old and has a history of serious medical conditions, including cardiac problems that required implantation of an automatic defibrillator in his heart. The defibrillator can produce blood clots, increasing his risk of stroke. R.B. suffered a stroke in April 2018, after which he began experiencing memory loss, disorientation and confusion. In the following months, friends and law enforcement located R.B. walking in Helena on multiple occasions, appearing lost and without shoes. Dr. Ashley Basten, a hospitalist at St. Peter's Health, expressed concern during her testimony that, if such an event would occur during the winter season, it would be fatal to R.B. R.B. was taken to the emergency room many times for confusion and physical complaints. He had difficulty thinking rationally and, even in a hospital setting, struggled to remember to eat, bathe, and care for his hygiene. Attempts to place R.B. in an assisted living facility were unsuccessful, as he repeatedly left the facilities against medical advice, including a skilled nursing facility in Missoula. He slept in a car for two nights in September 2018, after which he got lost in Helena, and upon being located was taken to the St. Peter's Hospital emergency room. When he tried to leave, he was placed in emergency detention, and an evaluation was conducted by Karrie Bird, LCPC, a mental health professional person at Western Montana Mental Health Services in Helena. Bird, noting an observation from Dr. Basten that R.B.

3

"cannot follow instructions," opined in her initial report that "[R.B.] presents imminent danger to himself due to his altered mental status and inability to meet his own needs of shelter and safety," upon which the State filed a petition for involuntary commitment, leading to R.B.'s trial.

¶4 In an involuntary commitment proceeding, the State must prove physical facts or evidence beyond a reasonable doubt and "all other matters" by clear and convincing evidence. Section 53-21-126(2), MCA. "The district court, as the fact finder, evaluates if the [State] has met its burden of presenting clear and convincing evidence regarding all required elements for [the commitment]. . . . Upon appeal, . . . this Court does not substitute its judgment as to the strength of the evidence for that of the district court." *In re B.J.J.*, 2019 MT 129, ¶ 10, 396 Mont. 108, 443 P.3d 488. We instead review a district court's commitment order to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. *In re S.H.*, 2016 MT 137, ¶ 8, 383 Mont. 497, 374 P.3d 693. An appeal from an order of involuntary commitment is not moot despite the respondent's release because the issues are capable of repetition and yet otherwise would evade review. *In re S.H.*, ¶ 9.

¶5 R.B.'s appeal focuses on a sole objection made by his counsel during the trial to the basis of Bird's testimony regarding a key issue in the proceeding, which R.B.'s appellate briefing describes as "whether R.B.'s symptoms were 'medical,' requiring medical treatment, or 'mental,' requiring psychiatric treatment." R.B. contends that, rather than offering her own professional opinion, Bird conveyed the opinions of medical doctors that

4

R.B.'s condition was not primarily a medical one, which constituted impermissible hearsay evidence going to the truth of the matter asserted—that R.B. suffered from a mental disorder.

¶6    Dr. Basten was the first professional person to testify at trial. Basten had treated R.B. on multiple admissions at the St. Peter's Hospital emergency room, and had attempted to secure a primary care physician relationship for R.B., but R.B. would not follow through with the appointments made for him with local physicians. She likewise was involved in attempting to secure a facility placement for R.B. Referencing her treatment of R.B. in August 2018, Basten testified:

> Q. Okay. And at that point in time, what were his diagnoses?
>
> A. The biggest one was the stroke extension. So ischemic stroke with more brain tissue involved, cognitive d[y]sfunction, which is a term for not being able to think clearly, and vascular dementia, which is a form of dementia caused by strokes.
>
> .   .   .
>
> Q. Okay. But suffice to say while you are treating him for stroke, you're also paying attention to some of these other conditions –
>
> A. Yes, ma'am.
>
> Q. -- that he's been diagnosed with? Okay. And how confident are you in your vascular dementia diagnoses and the other conditions, the cognitive d[y]sfunction and the stroke extension that you testified to earlier? I guess what I'm asking is, how confident are you that his current mental state is attributable to those things and not, for instance, just a side effect of one of his medications or the heart condition?
>
> A. Very confident. And one reason I don't think it's a side effect of medications is he's often off of his medications when he comes in more

confused. When we get him back onto the medications, he does do some better but not -- not well enough to take care of himself.

¶7 Bird then testified regarding her evaluation of R.B. In explaining the efforts she undertook to reach her opinions, Bird explained the medical records she reviewed and the consultations she had with other medical providers, including physicians, which led up to the formation of her opinion. During that explanation, R.B.'s objection was entered:

> Q. What was the information that you obtained, and what did you rely -- what did you rely upon in reaching your opinion today?
>
> A. So I relied on multiple medical records that we've obtained relating to [R.B.'s] care over the past few months. Multiple doctors in speaking with me who have helped him have informed me that they did not feel it was a medical issue. The cardiologist did send -- we got a note by the cardiologist who specified that that question had been presented and that she [] did not feel that it was related to a heart problem at all.
>
> MR. TROSPER: Objection. Hearsay.
>
> THE COURT: Overruled.

Bird then proceeded to offer her own opinion:

> Q. And what opinion ha[ve] you concluded?
>
> A. So based on the records that I've reviewed and just the recommendations of the professional people that I have spoken to about his care, *also my observations of his mental status* at different times, I feel that he needs to be committed. I don't feel like he can take care of himself independently.
>
> Q. Okay. And do you know what mental disorder he suffers from?
>
> A. . . . *I've diagnosed him* with an unspecified neural cognitive disorder which would support and cover as a broad diagnosis dementia processes.

(Emphasis added.).

6

¶8 Later, outside the presence of the jury, the District Court brought up counsel's objection, noting that, "in the *Matter of C.K.* [2017 MT 69, 387 Mont. 127, 391 P.3d 735], the Supreme Court says there is no requirement the facts upon which an expert relies in forming an opinion to be themselves admissible evidence." Counsel replied, "I realized that I had made a stupid objection."

¶9 Well, yes and no. The District Court correctly referenced the rule we articulated in *In re C.K.*, regarding commitment proceedings, specifically, that "subject to limitation or exclusion under Rule 403, otherwise inadmissible hearsay may be admissible through an expert under Rule 703 upon proper foundation and for the limited purpose of explaining the basis of the expert's opinion rather than proving the facts asserted in the statement." *In re C.K.*, ¶ 29. However, counsel's objection was made at a point in Bird's testimony where it appeared Bird was simply going to offer the opinion of other experts with regard to the nature of R.B.'s mental difficulties, which, standing alone, would have been an improper foundation for her testimony. In other words, the role of the professional person is not to simply present a survey of the opinion of other professionals, but to offer her own opinion. *See In re C.K.*, ¶ 28 ("Waples [properly] based her opinion testimony on her professional expertise, her own personal observations, and otherwise inadmissible hearsay of a type reasonably relied upon by mental health experts."). Had Bird offered no more, the objection to the foundation of her testimony would have been appropriate. However, considering her testimony as a whole, Bird offered, not merely the opinions of other professionals, but her own opinion based upon her own investigation, including her own

7

observations. Bird provided her own diagnosis of R.B.'s mental disorder and, although this specific diagnosis was not also offered by Dr. Basten, the nature of R.B.'s condition as a mental issue, rather than a physical condition, was confirmed by Dr. Basten. While R.B. points to statements made during the course of Bird's investigation about her concern that R.B.'s problems were only medical in nature, she ultimately resolved the issue to the contrary.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review, and the District Court committed no reversible error.

¶11 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON